Case No. 20-50262

# IN THE UNITED STATES COURT OF APPEALS FOR THE FIFTH CIRCUIT

TEXAS ENTERTAINMENT ASSOCIATION, INCORPORATED,
*Plaintiff-Appellee,*

*v.*

GLENN HEGAR, COMPTROLLER OF PUBLIC ACCOUNTS OF
THE STATE OF TEXAS, IN HIS OFFICIAL CAPACITY,
*Defendant-Appellant.*

On Appeal from the United States District Court
for the Western District of Texas, Austin Division

## APPELLEE'S RESPONSE TO APPELLANT'S PETITION FOR REHEARING EN BANC

Casey T. Wallace
Texas Bar No. 00795827
Benjamin W. Allen
Texas Bar No. 24069288
William X. King
Texas Bar No. 24072496
WALLACE & ALLEN, LLP
440 Louisiana Street, Suite 1500
Houston, Texas 77002
Tel.: (713) 227-1744
Fax: (713) 227-0104
cwallace@wallaceallen.com
ballen@wallaceallen.com
wking@wallaceallen.com
**COUNSEL FOR PLAINTIFF-APPELLEE**

# CERTIFICATE OF INTERESTED PERSONS

Pursuant to Fifth Circuit Rule 35.2.1, the undersigned certifies that the following listed persons and entities as described in the fourth sentence of Fifth Circuit Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this Court may evaluate their possible recusal or disqualification.

| **Plaintiff/Appellee** | **Trial and Appellate Counsel** |
|---|---|
| Texas Entertainment Association, Incorporated ("TEA") | Casey T. Wallace |
| | Benjamin W. Allen |
| | William X. King |
| TEA does not have a parent corporation and no publicly held corporation owns 10% or more of its stock. | Wallace & Allen, LLP |

| **Defendant/Appellant** | **Trial and Appellate Counsel** |
|---|---|
| Glenn Hegar, Comptroller of Public Accounts of the State of Texas, in his Official Capacity | Ken Paxton<br>Attorney General of Texas |
| | Brent Webster<br>First Assistant Attorney General |
| | Judd E. Stone II<br>Solicitor General |
| | Ari Cuenin<br>Assistant Solicitor General<br>ari.cuenin@oag.texas.gov |
| | Melissa L. Hargis<br>Assistant Attorney General |

  */s/ William X. King*
   William X. King

# INTRODUCTION

The Comptroller's petition for rehearing repeats the same arguments he asserted and lost before the district court and panel. It does not satisfy the requirements of Federal Rule of Appellate Procedure 35(a).

This case centers on the constitutionality of the Comptroller's administrative rule interpreting the word "clothing" as it appears in the "Fee Imposed on Certain Sexually Oriented Businesses." TEX. BUS. & COM. CODE §§ 102.051-.056 ("SOBF"); 34 TEX. ADMIN. CODE § 3.722(a)(1) ("Clothing Rule"). The panel held that the Clothing Rule offends the First Amendment and that its retroactivity violates the Fourteenth Amendment's Due Process Clause.

Before reaching the constitutional questions, the panel confirmed that the Tax Injunction Act ("TIA") presents no jurisdictional barrier. The panel correctly applied the principles derived from "[t]he leading case in this area, *San Juan Cellular Telephone Company v. Public Service Commission*," to conclude that the SOBF is a fee, not a "tax" subject to the TIA. *Neinast v. Tex.*, 217 F.3d 275, 278 (5th Cir. 2000) (citing *San Juan Cellular*, 967 F.2d 683, 685 (1st Cir. 1992) (Breyer, C.J.)).

The Comptroller argues that the panel's TIA analysis conflicts with *Neinast* and *Henderson v. Stalder*, 407 F.3d 351 (5th Cir. 2005) because a levy may only be a fee if the revenue it generates is used to defray the cost of regulation. Neither case so holds, nor do they create a "regulatory costs" test. What they do illustrate is that

a charge may be a fee if it serves a regulatory purpose indirectly by, for example, offsetting regulatory costs. Here, the panel found that the SOBF qualifies as a fee because it serves a regulatory purpose directly *and* indirectly. App.12.[1]

Next, the Comptroller challenges the panel's First Amendment analysis. He complains that instead of first deciding if the Clothing Rule is facially content based or content neutral as described in *Reed v. Town of Gilbert*, 576 U.S. 155 (2015), the panel examined his justifications before concluding that the rule is content based and subject to strict scrutiny.

This argument presents a sequential distinction without a difference. Even if a regulation is facially content neutral, under *Reed* and this Court's decision in *Reagan Nat'l Advert. of Austin, Inc. v. City of Austin*, 972 F.3d 696 (5th Cir. 2020), cert. granted sub nom. No. 20-1029 (U.S. June 28, 2021), it may still be treated as content based under the conditions that the panel found present here: the Comptroller failed to justify the Clothing Rule without reference to the latex clubs' expression and "directed [it] at the essential expressive nature of [their] business," so therefore the panel was "'forced to conclude the [Clothing Rule] … is a content[]based restriction'…." App.21-22. The Comptroller presented no argument that the Clothing Rule satisfies strict scrutiny, leaving the panel with "no cause to disagree

---

[1] Citations to the Comptroller's petition are indicated as "Pet." Citations to the panel's opinion are indicated as "App."

with the district court's conclusion that the Clothing Rule fails … under the First Amendment." *Id.*

Last, the Comptroller argues that a question of exceptional importance exists, claiming that the panel's conclusion that the Clothing Rule violates the Constitution conflicts with a state appellate court's decision that the rule is valid under Texas's Administrative Procedures Act. *Hegar v. Tex. BLC, Inc.*, No. 01-18-00554-CV, 2020 WL 4758474 (Tex. App.—Houston [1st Dist.] Aug. 18, 2020, pet. denied). The Comptroller neglects to tie this broad assertion to any discrete issue before the panel, let alone articulate why the resolution of divergent questions of state and federal law warrants en banc rehearing.

# TABLE OF CONTENTS

**Page**

Certificate of Interested Persons .................................................................. i

Introduction .................................................................................................... ii

Table of Authorities ...................................................................................... vi

Course of Proceedings and Statement of Facts...........................................1

Argument........................................................................................................3

  I. The Panel Correctly Reasoned That the "Fee Imposed on Certain Sexually Oriented Businesses" is a Fee Not Subject to the TIA.......................3

      A.    Evaluation of the SOBF's regulatory purpose conforms to this Court's precedent. ................................................................4

      B.    The panel's decision creates no inter-circuit conflict. ..........................8

  II. The Panel's First Amendment Analysis and Conclusion That the Clothing Rule Fails Strict Scrutiny Complies with *Reed*. ..................9

  III.The *Texas BLC* Opinion Yields No Questions of Exceptional Importance. ..................................................................................12

Conclusion ...................................................................................................14

Certificate of Compliance ..........................................................................16

Certificate of Filing and Service ................................................................17

# TABLE OF AUTHORITIES

**FEDERAL CASES**                                                                    **Page(s)**

*Ass'n for Accessible Medicines v. James*,
  974 F.3d 216 (2d Cir. 2020) ..............................................................8, 9

*Boudreaux v. Louisiana State Bar Ass'n*,
  3 F.4th 748 (5th Cir. 2021) ...................................................................8

*Bouie v. City of Columbia*,
  378 U.S. 347 (1964)............................................................................13

*Empress Casino Joliet Corp. v. Balmoral Racing Club, Inc.*,
  651 F.3d 722 (7th Cir. 2011) ............................................................8, 9

*England v. Louisiana State Bd. of Med. Examiners*,
  375 U.S. 411 (1964)............................................................................14

*Hawaii Hous. Auth. v. Midkiff*,
  467 U.S. 229 (1984)............................................................................13

*Henderson v. Stalder*,
  407 F.3d 351 (5th Cir. 2005) ...................................................... *passim*

*Home Builders Ass'n of Mississippi, Inc. v. City of Madison*, *Miss.*,
  143 F.3d 1006 (5th Cir. 1998) ..................................................... 3, 4, 7

*Kathrein v. City of Evanston, Ill.*,
  752 F.3d 680 (7th Cir. 2014) ................................................................9

*McDonald v. Longley*,
  4 F.4th 229 (5th Cir. 2021) ...............................................................4, 8

*MD II Entm't, Inc. v. City of Dallas, Tex.*,
  28 F.3d 492 (5th Cir. 1994) ................................................................11

*Minneapolis Star & Tribune Co. v. Minnesota Com'r of Revenue*,
  460 U.S. 575 (1983)............................................................................11

*Neinast v. Tex.*,
  217 F.3d 275 (5th Cir. 2000) ....................................................ii, 3, 4, 5

*Norfolk S. Ry. Co. v. City of Roanoke*,
  916 F.3d 315 (4th Cir. 2019) .............................................................4, 8

*Reagan Nat'l Advert. of Austin, Inc. v. City of Austin*,
  972 F.3d 696 (5th Cir. 2020) ...................................................... iii, 10

*Reed v. Town of Gilbert*,
  576 U.S. 155 (2015) ..................................................................... iii, 9, 10

*San Juan Cellular Tel. Co. v. Pub. Serv. Comm'n of Puerto Rico*,
  967 F.2d 683 (1st Cir. 1992) .......................................................... *passim*

*Time Warner Cable, Inc. v. Hudson*,
  667 F.3d 630 (5th Cir. 2012) ..................................................................12

*United States v. Playboy Entm't Group, Inc.*,
  529 U.S. 803 (2000) ...............................................................................11

*Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*,
  455 U.S. 489 (1982) ...............................................................................13

## STATE CASES

*Hegar v. Tex. BLC, Inc.*,
  No. 01-18-00554-CV, 2020 WL 4758474 (Tex. App.—
  Houston [1st Dist.] Aug. 18, 2020, pet. denied) ................................. iv, 12, 13, 14

## CONSTITUTIONAL PROVISIONS & STATUTES

U.S. Const. amend.:

  I .................................................................................................. *passim*

  XIV ................................................................................................... ii, 2

28 U.S.C. § 1341 ..........................................................................................3

Tex. Bus. & Com. Code:

  § 102.051 .......................................................................................... ii, 1

  § 102.054 ...............................................................................................7

Tex. Gov't Code § 420.008 ..........................................................................7

Tex. Tax Code § 111.002 ...........................................................................12

## RULES & REGULATIONS

34 Tex. Admin. Code § 3.722 ................................................................... ii, 2

41 Tex. Reg. 8341 ........................................................................................1

5th Cir. R. 28.2.1 ......................................................................................... i

5th Cir. R. 35.1 ..........................................................................................14

5th Cir. R. 35.2 ............................................................................................ i

Fed. R. App. P. 35 ....................................................................................... ii

## COURSE OF PROCEEDINGS AND STATEMENT OF FACTS

Effective January 1, 2008, the SOBF imposes a $5 per-patron, per-entry charge on establishments that qualify as "sexually oriented businesses" because they feature "live nude" entertainment or performance for an audience of two or more and allow for the on-premises consumption of alcoholic beverages. TEX. BUS. & COM. CODE § 102.051(2). The SOBF defines "nude" to mean "entirely unclothed" or "clothed in a manner that leaves uncovered or visible through less than fully opaque clothing any portion of the breasts below the top of the areola of the breasts, if the person is female, or any portion of the genitals or buttocks." *Id*. § 102.051(1).

After the SOBF's enactment, many adult cabarets stopped featuring "nude" entertainment by requiring performers to wear opaque latex coverings over their breasts. App.3. For years, the Comptroller took no enforcement action against these 'latex clubs,' implemented no official policy about what "clothing" means, and even assured some latex clubs that they were not subject to the fee because their performers were not "nude." App.22-23.

The Comptroller changed the status quo in October 2016, when he first proposed to define "clothing" via administrative fiat. 41 TEX. REG. 8341, 8511-13. The resulting definition describes what clothing is ("[a] garment used to cover the body, or a part of the body, typically consisting of cloth or a cloth-like material") and what clothing is not ("[p]aint, latex, wax, gel … and other substances applied to

1

the body in a liquid or semi-liquid state are not clothing"). 34 TEX. ADMIN. CODE § 3.722(a)(1). The Comptroller then leveraged the Clothing Rule against latex clubs, assessing them with 'delinquent' fees stretching back to 2008. App.3; ROA.915-918.

In June 2017, the TEA—an association of adult entertainment businesses that includes latex clubs—filed suit in the Western District of Texas. The TEA challenged the Clothing Rule as violative of the First Amendment and the Fourteenth Amendment's Due Process and Equal Protection Clauses.

In February 2018, the district court rejected the Comptroller's jurisdictional defenses, including his invocation of the TIA and various abstention doctrines. App.4-5. A year later, the district court granted partial summary judgment favoring the TEA on its First Amendment claim (but dismissed its overbreadth challenge), *sua sponte* ruled that the Clothing Rule's retroactivity violates due process, and rejected the Comptroller's jurisdictional defenses for a second time. App.5; ROA.894-923.

In October 2019, the district court conducted a bench trial to resolve the remaining merits questions. The lower court found that the Comptroller first notified latex cubs about his definition of "clothing" in October 2016, and that the Clothing Rule violated the latex clubs' right to equal protection. App.6.

The Comptroller appealed on numerous grounds. On August 19, 2021, the panel issued its opinion, affirmed the district court's jurisdictional, First Amendment, and due process rulings, but reversed its equal protection decision. Unhappy with the panel's opinion, the Comptroller now asks for en banc rehearing on three issues.

## ARGUMENT

I.   **The Panel Correctly Reasoned That the "Fee Imposed on Certain Sexually Oriented Businesses" is a Fee Not Subject to the TIA.**

The TIA, 28 U.S.C. § 1341, is a jurisdictional bar enacted to inhibit federal court interference with state tax systems. *Home Builders Ass'n of Mississippi, Inc. v. City of Madison*, *Miss.*, 143 F.3d 1006, 1010 (5th Cir. 1998). The TIA's applicability turns on whether a levy is a "tax" or a fee. *Neinast*, 217 F.3d at 278. That "distinction [exists on] a spectrum with the paradigmatic fee at one end and the paradigmatic tax at the other." *Id.* (citing *San Juan Cellular*, 967 F.2d at 685). This Court applies considerations derived from *San Juan Cellular* to illuminate where a levy falls on the tax-fee spectrum:

> The classic tax sustains the essential flow of revenue to the government, while the classic fee is linked to some regulatory scheme. The classic tax is imposed by a … legislature, while the classic fee is imposed by an agency upon those it regulates. The classic tax is designed to provide a benefit for the entire community, while the classic fee is designed to raise money to help defray an agency's regulatory expenses.

*Home Builders*, 143 F.3d at 1011; *see Neinast*, 217 F.3d at 278. These considerations are not rigidly applied; they "merely provide[] flexible and versatile guidance in assessing where a particular charge sits on the tax-fee continuum." *Norfolk S. Ry. Co. v. City of Roanoke*, 916 F.3d 315, 319 n.2 (4th Cir. 2019).

### A. Evaluation of the SOBF's regulatory purpose conforms to this Court's precedent.

The thrust of the Comptroller's argument is that the panel's TIA analysis contravenes governing precedent because it applied a "regulatory purpose" test, as opposed to a "regulatory cost" test requiring that a levy be considered a "tax" unless it "'defray[s] the costs of a particular regulatory regime.'" Pet.2, 9 (quoting *Henderson*, 407 F.3d at 358-59). His argument is premised on a myopic reading of the panel's opinion and controlling caselaw.

First, the Comptroller's theory overlooks a basic concept seen throughout this Court's TIA precedent—it is "the government's *purpose* in exacting the charge … that distinguishes taxes from non-TIA-covered regulatory fees." *Henderson*, 407 F.3d at 358 (emphasis added). The purpose of a "classic tax" is to "sustain[] the essential flow of revenue to the government," whereas the purpose of a "classic fee is linked to some regulatory scheme." *Home Builders*, 143 F.3d at 1011; *see, e.g.*, *McDonald v. Longley*, 4 F.4th 229, 242 (5th Cir. 2021) (finding state bar membership fees were "classic fees" because, *inter alia*, "they are linked to the regulation of the legal profession, not to generating revenue for the government").

4

Second, the panel did not improperly "substitute First Circuit precedent for *Neinast* and *Henderson*." Pet.11. It cited *San Juan Cellular* for the unremarkable proposition that a charge's purpose can manifest in different ways. A charge may be a fee if it serves a regulatory purpose "directly by, for example, deliberately discouraging particular conduct by making it more expensive," or "indirectly by, for example, raising money placed in a special fund to help defray the agency's regulation-related expenses." App.11-12 (quoting *San Juan Cellular*, 967 F.2d at 685). *Neinast* and *Henderson* did not reject this observation or create some "regulatory cost" test. They simply addressed arguments that license plate charges were indirectly linked to regulatory purposes.

In *Neinast*, the issue arose because the state argued that a placard charge was a "tax" since the revenue it raised was deposited into the general highway fund, where it would "more likely provide a benefit to the community … than actually defray the cost of the program." *Neinast*, 217 F.3d at 278. The Court rejected the claim because the "question is not where the money is deposited, but the purpose of the assessment." *Id*. The placard charge indirectly served a regulatory purpose because "[t]he purpose here is described narrowly as being for the benefit of the program itself." *Id*. Nothing in *Neinast* foreclosed the idea that a charge may be a fee if it serves regulatory purposes directly.

Nor does *Henderson* teach that "the lack of *offsetting costs*," *i.e.*, defraying or reimbursing regulatory costs, transforms a fee into a tax. Pet.10 (emphasis original). The *Henderson* plaintiff claimed that a specialty license plate charge was fee-like because funds were "earmarked for very specific organizations and thus 'defray the cost of moneys expended to these special programs, which are not intended for the benefit of the entire community.'" *Henderson*, 407 F.3d at 357. The Court rejected this claim as "logically attenuated from the facts" because use of the funds was not linked to *any* regulatory purpose, directly or indirectly. *Id*. Louisiana's legislature had "decreed that the excess charges would be used for a number of purposes, ranging from (but not limited to) park development to university education to adoption support," none of which were "'regulatory' as to the specialty plate purchasers." *Id*. at 358.

Here, the panel correctly observed that "the SOBF serves *both* direct and indirect regulatory aims." App.12 (emphasis added). The Comptroller has never disputed that the SOBF directly serves regulatory aims. Even now, he frames the overarching question as whether "strip clubs have [constitutional] rights to avoid regulation" and admits that the "[t]he Legislature enacted the charge to combat the social ills of serving alcohol to live-nude-entertainment patrons." Pet.1.

The panel also found that the SOBF indirectly serves regulatory purposes because the money it generates is used solely to subsidize a special sexual assault

program. App.12 (citing TEX. BUS. & COM. CODE § 102.054). Unlike the fund in *Henderson*, the sexual assault program was not "designed to provide a benefit for the entire community," *e.g.*, funding parks, education, and adoption. *Home Builders*, 143 F.3d at 1011. Rather, the fund is a "special account" expressly linked to the SOBF, its narrow legislative justifications, and its regulatory purpose. *See* TEX. GOV'T CODE §§ 420.008(b)(1)(C), (c)(1)(A)-(J) (describing source of funding as "fees and fines collected under" the SOBF and its usage, *e.g.*, awareness, prevention, and victim support services).

The Comptroller goes on to criticize the panel's examination of the SOBF's text because labels that a legislature applies to a charge have "no bearing." *Home Builders*, 143 F.3d at 1011, n.10. But it is equally true that courts must "look principally to the language of the [assessment] and the circumstances surrounding its passage" to divine its purpose. *Id.* at 1011-12. That is what the panel did here, citing the SOBF's legislative history, text, and structure to confirm its regulatory purpose. *See* App.11 ("Although labels may not be dispositive, the statutory text actually chosen by the legislature is the best yardstick of the legislature's intent").

The panel did not announce new or different law in finding that "the SOBF very clearly serve[s] a regulatory purpose" and is a fee. App.11. It correctly applied the same considerations that this Court has used and continues to use when

distinguishing between a "tax" and a fee. *See McDonald*, 4 F.4th at 242; *see also Boudreaux v. Louisiana State Bar Ass'n*, 3 F.4th 748, 758 (5th Cir. 2021).

### B.     The panel's decision creates no inter-circuit conflict.

The Comptroller's assertion that the panel's opinion runs contrary to the prevailing consensus of federal courts is false. Most federal courts use the same considerations applied here and examine whether a charge's "primary purpose is to raise revenue for general government activity that benefits the entire community" or serve a narrower regulatory purpose. *Norfolk S. Ry.*, 916 F.3d at 320, 327; *Ass'n for Accessible Medicines v. James*, 974 F.3d 216, 222 n.7 (2d Cir. 2020) (collecting cases); *Empress Casino Joliet Corp. v. Balmoral Racing Club, Inc.*, 651 F.3d 722, 739 (7th Cir. 2011) (observing that "most courts" follow *San Juan Cellular* and "look to the structure and purpose of the charge at issue to determine whether it counts as a tax for purposes of the TIA") (Sykes, C.J., dissenting).

The Comptroller casts *Association for Accessible Medicines* as "irreconcilable with the panel's analysis." Pet.11-12. Far from it. The Second Circuit relied on the *San Juan Cellular* considerations to find that a levy on opioid manufacturers—a charge whose form and purpose are not comparable to the SOBF—was a "tax." *See Ass'n for Accessible Medicines*, 974 F.3d at 223. Unlike the SOBF, numerous facets of the opioid levy revealed its tax-like purpose, *e.g.*, its legislative origins (responding to the "public health crisis" and widespread opioid-related maladies),

the "broad and general" spectrum of businesses subject to the levy ("'[a]ll manufacturers and distributors ... that sell or distribute opioids in the state'"), and use of the funds ("broad public health initiatives that undoubtedly provide a 'general benefit'" and "extend[] well beyond the opioid crisis") to "serve[] general revenue-raising purposes without a regulatory or punitive aim." *Id*. at 223-26.

The Comptroller's reliance on excerpts from *Empress Casino* to create the appearance of a new circuit split is misleading. The Seventh Circuit rejected *San Juan Cellular*-type "open-ended, multifactor tests" and found the charge on riverboat casinos to be a "tax" under a materially different set of considerations. *See Empress Casino*, 651 F.3d at 728-30; *see also Kathrein v. City of Evanston, Ill*., 752 F.3d 680, 684-87 (7th Cir. 2014) (discussing "the new *Empress Casino*" standard). The Fifth Circuit has never cited *Empress Casino* as persuasive authority or endorsed any similar analysis. The Comptroller provides no reason why the panel should have followed the Seventh Circuit's approach.

## II.    The Panel's First Amendment Analysis and Conclusion That the Clothing Rule Fails Strict Scrutiny Complies with *Reed*.

The Supreme Court explained in *Reed* that strict scrutiny always applies to a facially content-based regulation regardless of the government's "benign motive" for its creation. *Reed*, 576 U.S. at 165. This Court interpreted *Reed* to mean what it says: "a court must consider whether a law is facially content based or content

neutral '*before* turning to the law's justification or purpose.'" *Reagan*, 972 F.3d at 702 (emphasis original) (quoting *Reed*, 576 U.S. at 165).[2]

Because the panel proceeded to examine the Comptroller's justifications for the Clothing Rule, he believes that it inappropriately bypassed *Reed's* first step, so therefore the rule is "content-neutral on its face" and beyond constitutional reproach. Pet.13-14. Although that is effectively where the Comptroller's argument ends, that is not where *Reed's* analysis or the panel's decision stopped.

*Reed* explains that even if a regulation is facially content neutral, a court may examine the government's rationale for the regulation. That is because a content neutral regulation may still be treated as content based if it cannot be "justified without reference to the content of the regulated speech, or [if it was] adopted by the government because of disagreement with the message the speech conveys." *Reed*, 576 U.S. at 164 (cleaned-up) (citation omitted).

The panel recognized that the Comptroller failed to justify the Clothing Rule without reference to latex clubs' speech. He "offered no evidence to show that he even considered the data linking the SOBF with adverse secondary effects." App.21-22. His 'benign' definitional explanation for the Clothing Rule was unsupported by

---

[2]  In *Reagan*, the Court expressly abrogated numerous cases that relied on the secondary effects, 'justification first' content-neutrality approach. *Reagan*, 972 F.3d at 703, n.3. Because *Reagan* was issued on August 25, 2020, the parties did not have an opportunity to address its impact before the district court.

the evidence and "belied by the parties' behavior since the enactment of the SOBF in 2007." *Id*.; *see MD II Entm't, Inc. v. City of Dallas, Tex.*, 28 F.3d 492, 494 (5th Cir. 1994) (rejecting claim that an ordinance was "merely a definition that does not regulate speech at all" as "exalt[ing] form over substance").

In the absence of any justification, the Comptroller's promulgation of the Clothing Rule "suggests that the goal of the regulation is not unrelated to suppression of expression…." *Minneapolis Star & Tribune Co. v. Minnesota Com'r of Revenue*, 460 U.S. 575, 585 (1983). That goal was content based. The Clothing Rule was created and tailored specifically in response to how latex clubs had modulated their featured expression to avoid the fee. As the district court stated, "there is no question that the purpose of the [Clothing] Rule was to bring clubs featuring dancers wearing latex as covering … within the ambit of the $5 fee statute." ROA.1166. The panel agreed with that assessment, recognizing that the rule is "directed at the essential expressive nature of the latex clubs' business" and is thus subject to strict scrutiny. App.21-22 (quotation marks omitted).

Against these facts, the panel correctly applied well-established First Amendment law. Even if content neutral, a regulation such as the Clothing Rule— one promulgated to target the expression of a select band of businesses—is content based and requires application of strict scrutiny. *See United States v. Playboy Entm't Group, Inc*., 529 U.S. 803, 812 (2000) ("Laws designed or intended to suppress or

restrict the expression of specific speakers contradict basic First Amendment principles"); *Time Warner Cable, Inc. v. Hudson*, 667 F.3d 630, 639 (5th Cir. 2012) ("Laws singling out a small number of speakers for onerous treatment are inherently suspect").

## III.    The *Texas BLC* Opinion Yields No Questions of Exceptional Importance.

Finally, the Comptroller casts the panel's decision as irreconcilable with the *Texas BLC* opinion because the "necessary premise of the panel's opinion [is] that the Comptroller's rule extends state law *beyond* the $5-charge statute." Pet.15 (emphasis original). He makes no attempt to link this 'conflict' argument to any specific question of exceptional importance because there are none.

First, the reason why the panel and *Texas BLC* reached 'conflicting' outcomes is because they addressed the Clothing Rule's validity under completely different laws. The sole issue in *Texas BLC* was whether the Clothing Rule contravenes the SOBF in violation of the Texas APA. *See Texas BLC*, 2020 WL 4758474, at *6. In this case, "[t]he claims alleged … rest wholly on rights guaranteed by the federal Constitution." App.14-15. It does not follow that the Clothing Rule's validity under a state law construct necessarily means that it is also valid under the Constitution. *See*, *e.g.*, TEX. TAX CODE § 111.002 ("The comptroller may adopt rules that do not conflict with the … the constitution of … the United States…").

If the Comptroller intended to generally direct his 'conflict' assertion at the panel's rejection of his abstention defenses, he presents nothing new. Yet again, he fails to identify any "difficult or unsettled" questions of state law that required abstention. App.15 (quoting *Hawaii Hous. Auth. v. Midkiff*, 467 U.S. 229, 236 (1984)). Nor has the Comptroller explained how *Texas BLC's* outcome "forecloses [the] TEA's claims," Pet.15, or avoided "unnecessary adjudication of federal questions." *Midkiff,* 467 U.S. at 236.

That is because no aspect of the TEA's constitutional claims required any "textual analysis" of the Clothing Rule. Since the TEA challenged the constitutionality of the Clothing Rule itself, the Comptroller never argued that the rule's validity hinged on an additional layer of interpretation. *See, e.g.*, *Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc*., 455 U.S. 489, 494 n. 5, (1982) ("[i]n evaluating a facial challenge to state law, a federal court must ... consider any limiting construction that a state court or enforcement agency has proffered").

Instead, as shown in the panel's discussion, the TEA's First Amendment claim turned on the Comptroller's justifications for the Clothing Rule, not the particulars of its text. Likewise, the TEA's due process claim was predicated on the Comptroller's conduct—retroactively applying the rule without notice—not the accuracy of the Comptroller's "closely-guarded (and unenforced) secret" interpretation of the SOBF. App.22-23; *see Bouie v. City of Columbia*, 378 U.S. 347,

352 (1964) (observing that due process violations may result even "from an unforeseeable and retroactive judicial expansion of narrow and precise statutory language"). Nothing in *Texas BLC* changed any of the facts that were material to the panel's decision.

At bottom, the Comptroller's 'conflict' argument asks the Court to disregard a basic concept—that abstention's "recognition of the role of state courts as the final expositors of state law implies no disregard for the primacy of the federal judiciary in deciding questions of federal law." *England v. Louisiana State Bd. of Med. Examiners*, 375 U.S. 411, 415-16 (1964).

## CONCLUSION

The Comptroller's petition rehashes rejected arguments. His hope is to convince the Court that it should have stepped-aside so that a state court's adjudication of a different issue will resuscitate the Clothing Rule's validity—notwithstanding its constitutional defects. That is not the kind of extraordinary circumstance that justifies imposing "a serious call on limited judicial resources." 5th Cir. R. 35.1. The TEA asks the Court to deny the petition for rehearing en banc.

[signature block on next page]

Respectfully submitted,

WALLACE & ALLEN, LLP

 /s/ William X. King
Casey T. Wallace
Texas Bar No. 00795827
Benjamin W. Allen
Texas Bar No. 24069288
William X. King
Texas Bar No. 24072496
440 Louisiana St., Suite 1500
Houston, Texas 77002
Tel.: (713) 227-1744
Fax: (713) 227-0104
cwallace@wallaceallen.com
ballen@wallaceallen.com
wking@wallaceallen.com
**COUNSEL FOR APPELLEE**

## CERTIFICATE OF COMPLIANCE

I certify that this response to the Comptroller's Petition for Rehearing En Banc complies with the type-volume limitation required under Federal Rules of Appellate Procedure 32(g)(1), 35(e), and 35(b)(2) because it contains 3,866 words, excluding the parts of the response exempted by Fed. R. App. P. 32(f).

I further certify that this response complies with the typeface and type style requirements of Fed. R. App. P. 32(a)(5)-(6) because it has been prepared using Microsoft Word for Office 365 in 14-point font size and Times New Roman type style.

*/s/ William X. King*
William X. King

Dated: October 25, 2021

## CERTIFICATE OF FILING AND SERVICE

I certify that on October 25, 2021, I electronically filed this response to the

Comptroller's Petition for Rehearing En Banc by using the Court's CM/ECF system

and that the following counsel of record are being served with a copy of the response

by electronic means:

Ari Cuenin
Assistant Solicitor General
Office of the Attorney General
P.O. Box 12548 (MC 059)
Austin, Texas 78711-2548
Tel.: (512) 936-1827
Fax: (512) 474-2697
Ari.Cuenin@oag.texas.gov

*/s/ William X. King*
William X. King